J-S06022-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
TORIE DAY :
:
Appellant : No. 645 WDA 2024

Appeal from the Judgment of Sentence Entered March 5, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0005479-2021

BEFORE:  PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY LANE, J.:                    **FILED: April 29, 2025**

Torie Day ("Day") appeals from the judgment of sentence imposed following her convictions for driving under the influence ("DUI") — general impairment, and related offenses.[1]  We affirm.

In its opinion, the trial court aptly summarized the relevant factual and procedural history of this case as follows:

> At approximately 2:00 a.m. on May 11, 2021, Officer Robert Michels [("Officer Michels")] of the East McKeesport Borough Police Department while on a routine patrol in a marked police cruiser observed a vehicle approach a red light while traveling northbound on 5th Avenue near Route 30.  Officer Michels observed the vehicle enter the intersection and proceed to the left turning lane.  The vehicle drove past the stop line.  While this vehicle waited for the light to turn green, another vehicle entered the intersection in the next lane intending to proceed straight through the intersection.  The light then turned green for the adjacent vehicle to proceed but the light for the subject vehicle

---

[1] **See** 75 Pa.C.S.A. §§ 3802(a)(1), 1543(a), 1301(a), 3112(a)(1)(i), 4703(a), 4706(c)(5).

remained red. The subject vehicle proceeded through the steady red light and turned left onto westbound Route 30 where it came to a second red light at Broadway Avenue. Officer Michels observed the subject vehicle proceed through the second red light and continue westbound on Route 30. Officer Michels followed the subject vehicle to the intersection of Route 30 and Navy-Marine Corps Way where it stopped at another red light. Officer Michels activated his emergency lights. When the light turned green, the subject vehicle proceeded through the intersection and stopped in the left or passing lane on Route 30.

As Officer Michels approached the vehicle, he detected the smell of marijuana coming from the vehicle. He asked the driver, who [was] identified as [Day] to produce her operator's license, vehicle registration, and proof of insurance. Officer Michels testified that when he encountered [Day] and she began talking, he detected an odor of alcohol on her breath. [Day] did not possess her operator's license, but instead provided a United States Passport. When the officer ran the information that [Day] presented, he learned that her operator's license had been suspended and was also expired. The vehicle registration was also expired as was the state inspection sticker.

When he returned to [Day's] vehicle, Officer Michels requested that [Day] perform a series of field sobriety tests. Two tests, the finger dexterity test[,] and the counting test, were performed while [Day] was seated in the vehicle. These tests are not standard field sobriety tests but examine memory and coordination. Regarding the finger dexterity test, [Day] was unable to follow the instructions given by Officer Michels and then failed the test. The second test was a counting test where [Day] was asked to count backwards from [sixty-four to forty-eight]. On different attempts she got to a certain number and began counting forward. When [Day] finally got to [forty-eight], she continued counting to [forty-five], at which time she stopped and asked the officer at what number she was supposed to stop.

[Day] was also asked to perform two standardized field sobriety tests outside the vehicle, the walk and turn test and the one-leg stand test. [Officer Michels] demonstrated the tests and gave instructions on how to perform them. [Day] exhibited signs of impairment during the walk and turn test by repeatedly using her arms for balance, [failing] to step heel to toe, and stepping off the imaginary line while walking. She exhibited signs of

impairment during the one-leg stand test by using her arms to balance and bracing her raised foot against her [other] leg, contrary to the instructions. [Officer Michels] could not recall how far [Day] raised her arms for balance but was sure she raised them to balance herself.

Based upon Officer Michel's seven years' experience as a patrol officer and the results of the field sobriety tests that he conducted, Officer Michels believed [Day] was incapable of safe driving. He placed [Day] in custody and subsequently read her the Pennsylvania Department of Transportation DL-26 form, which set forth the penalties if a blood alcohol content [("BAC")] test is refused. [Day] refused to sign the form or consent to a chemical blood test.

[Day] was charged with one count of [DUI — general impairment, and five summary driving offenses: (1) driving while operating privilege is suspended or revoked; (2) driving unregistered vehicle; (3) failing to obey traffic control signals; (4) operation of vehicle without official certificate of inspection; and (5) operating a vehicle without evidence of emission inspection. . . . . Day] filed a petition for *habeas corpus* [and] a hearing was held on the petition, which was denied. [A] stipulated non-jury trial was held based on the evidence taken at the *habeas corpus* hearing as well as exhibits subsequently admitted, including portions of the standardized field sobriety test manual and the DL-26 form. Following [closing] argument . . ., [Day] was convicted of all charges. . . .

On March 5, 2024, [Day] was sentenced . . . to [an aggregate] six [] months['] probation, a drug and alcohol evaluation if deemed appropriate, to complete alcohol highway safety school, and to pay [several fines. Day] filed a timely post-sentence motion contending that her conviction was against the weight of the evidence and [that there was insufficient evidence to demonstrate that she failed to obey traffic control signals. T]he court granted in part and denied in part [Day's] post-sentence motion vacating only her conviction for traffic control signals. . . .

Trial Court Opinion, 8/9/24, at unnumbered 1–3 (unnecessary capitalization omitted and paragraph break inserted). Day filed a timely notice of appeal. Both Day and the trial court complied with Pa.R.A.P. 1925.

Day raises the following issue for our review: "Whether [Day]'s conviction for DUI [—] general impairment can be sustained where the Commonwealth failed to prove, beyond a reasonable doubt, that she was incapable of driving safely despite consuming some indeterminate amount of alcohol?" Day's Brief at 7 (unnecessary capitalization omitted).

Our standard of review of a sufficiency challenge is well settled:

> The standard we apply . . . is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated, and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Edwards***, 229 A.3d 298, 305–06 (Pa. Super. 2020) (brackets and citations omitted).

With respect to DUI offenses, section 3802 of the Motor Vehicle Code provides, in relevant part:

**(a) General impairment.—**

(1) An individual may not drive, operate, or be in actual physical control of the movement of a vehicle ***after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating, or being in actual physical control of the movement of the vehicle***.

75 Pa.C.S.A. § 3802(a)(1) (emphasis added).

To sustain a conviction under subsection 3802(a)(1), the Commonwealth must show: (1) that the defendant was the operator of a motor vehicle; and (2) that while operating the vehicle, the defendant was under the influence of alcohol to such a degree as to render her incapable of safe driving. *See Commonwealth v. Gause*, 164 A.3d 532, 541 (Pa. Super. 2017 (*en banc*) (citation omitted). To establish the second element, the Commonwealth must show that alcohol has "substantially impaired the normal mental and physical faculties required to safely operate the vehicle. Substantial impairment, in this context, means a diminution or enfeeblement in the ability to exercise judgment, to deliberate or to react prudently to changing circumstances and conditions." *Id*. at 541.

The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following: "the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the

investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech."

***Commonwealth v. Segida***, 985 A.2d 871, 879 (Pa. 2009). Additionally,

> Blood alcohol level may be added to this list, although it is not necessary and the two hour time limit for measuring blood alcohol level does not apply. Blood alcohol level is admissible in a subsection 3801(a)(1) case only insofar as it is relevant to and probative of the accused's ability to drive safely at the time he or she was driving. The weight to be assigned these various types of evidence presents a question for the fact-finder, who may rely on his or her experience, common sense, and/or expert testimony. Regardless of the type of evidence that the Commonwealth proffers to support its case, the focus of subsection 3802(a)(1) remains on the inability of the individual to drive safely ["***at the time of driving***"] due to consumption of alcohol — not on a particular blood alcohol level.

***Id***. at 879.

Under 75 Pa.C.S.A. § 1547(e), a defendant's refusal to submit to a BAC test may be used as evidence against the defendant:

> In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3802 or any other violation of this title arising out of the same action, the fact that the defendant refused to submit to chemical testing as required by subsection (a) may be introduced in evidence along with other testimony concerning the circumstances of the refusal. No presumptions shall arise from this evidence but it may be considered along with other factors concerning the charge.

75 Pa.C.S.A. § 1547(e).

Day argues that the evidence was insufficient to sustain her conviction for DUI — general impairment beyond a reasonable doubt because the Commonwealth did not prove that her consumption of "some indeterminate amount of alcohol" rendered her incapable of safely operating her motor

- 6 -

vehicle. Day's Brief at 14-15. Day contends that despite committing minor violations of the Motor Vehicle Code, her driving did not endanger her or other drivers' safety. *See id*. at 14. Day maintains, without offering any authority to support her conclusion, that Officer Michels' testimony "fell short of the level of certainty required by the criminal law" because he did not testify to Day having the "common signs of impairment: [b]loodshot, glassy eyes, or slurred speech."[2] *Id*. at 21.

The trial court concluded that the Commonwealth presented sufficient evidence beyond a reasonable doubt that Day was unable to safely drive her vehicle because:

> Officer Michels observed [Day] commit suspected traffic offenses by failing to obey two red lights. The odor of alcohol detected by Officer Michels, combined with [Day]'s failure to produce a valid driver's license and instead producing a passport, supports the inference of impairment. Further, [Day's] performance on the field sobriety tests are particularly telling. Her failure of the finger dexterity test, and the inability to count backward correctly during the counting test demonstrate impaired cognitive and motor functions. The performance on the walk and turn test and the one-leg stand test, where she was unable to maintain balance and follow instructions, further corroborate the presence of impairment.
>
> Regarding [Day]'s refusal to submit to chemical testing, 75 Pa.C.S.A § 1547(e) provides that a defendant's refusal to submit to a BAC test may be used as evidence against the defendant[.]

Trial Court Opinion, 8/9/2024, at unnumbered 4–5.

_____

[2] *See Commonwealth v. Brewer*, 876 A.2d 1029, 1035 (Pa. Super. 2005) (stating "It is the [a]ppellant who has the burden of establishing [her] entitlement to relief by showing that the ruling of the trial court is erroneous under the evidence or the law").

Based upon our review of the record, and viewing the evidence in a light most favorable to the Commonwealth, we conclude that the Commonwealth met its burden of proving beyond a reasonable doubt that Day was under the influence of alcohol to such a degree as to render her incapable of safely driving. **See Gause**, 164 A.3d 541; **see also** 75 Pa.C.S.A. § 3802(a)(1). In this case, the Commonwealth's evidence established that: (1) Day ran two red lights prior to stopping her vehicle in the passing lane of Route 30; (2) she failed four field-sobriety tests, and was unable to — among other things — count backward from sixty-four, walk heel-to-toe in a straight line, or stand on one leg without using her arms or other leg to maintain her balance; (3) the odor of alcohol emanated from her person; and (4) she refused to submit to any testing for the purpose of determining her BAC. **See Segida,** 985 A.2d at 879; **see also** 75 Pa.C.S.A. § 1547(e). Thus, contrary to Day's claim otherwise, we conclude that the evidence was sufficient to establish that she was incapable of safely driving. Accordingly, Day's claim is without merit.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

4/29/2025